IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| VERONICA M., § | |
| § | |
| PLAINTIFF, § | |
| § | |
| V. § | CIVIL CASE NO. 3:19-CV-942-S-BK |
| § | |
| COMMISSIONER OF § | |
| SOCIAL SECURITY ADMINISTRATION, § | |
| § | |
| DEFENDANT. § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order* 3, the Court now considers the parties' cross-motions for summary judgment. For the reasons that follow, it is recommended that *Plaintiff's Motion for Summary Judgment*, Doc. 17, be **DENIED**, *Defendant's Motion for Summary Judgment*, Doc. 18, be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

I. BACKGROUND

A. Procedural History

Plaintiff seeks judicial review of Defendant's partially favorable decision that Plaintiff was disabled as of January 1, 2016, although Plaintiff had sought a finding of disability as of May 16, 2012, her 50th birthday. The Appeals Council denied Plaintiff's request for review. Doc. 14-1 at 5. Plaintiff now appeals to this Court pursuant to 42 U.S.C. § 405(g).

B. **Factual Summary**

Plaintiff has a GED and past relevant work experience as a daycare worker. Doc. 14-1 at 48, 51. In April 2012, Plaintiff went to the emergency room complaining of intermittent right hip pain over the preceding two years. Doc. 14-1 at 478. Plaintiff further reported a history of arthritis and that she was not taking any medication for her hip pain. Doc. 14-1 at 478. Plaintiff had tenderness in her right hip and a limited range of motion, Doc. 14-1 at 479, and x-rays revealed moderate osteoarthritic changes to that hip, Doc. 14-1 at 483. Plaintiff was diagnosed with arthralgia and osteoarthritis and prescribed medication. Doc. 14-1 at 467, 471.

In June 2012, Plaintiff completed an adult function report (the "3373 Form"). Doc. 14-1 at 297. In the 3373 Form, Plaintiff reported that she cannot walk very well due to daily pain. Doc. 14-1 at 290. Plaintiff also reported that she lives alone, walks to places, shops at stores for about two hours once a month, and can count change. Doc. 14-1 at 291. Plaintiff further reported that she can dress and bathe herself, as well as prepare microwavable meals three times a week, Doc. 14-1 at 292-93. Plaintiff noted that her hobbies include reading, walking a little, watching television, and going to church. Doc. 14-1 at 294.

In June 2013, Plaintiff went to the emergency room because her left knee had been swollen for about one week. Doc. 14-1 at 371. Dr. Olusesan Oguntuga, M.D. noted that Plaintiff's left knee displayed pain at rest and on range of motion, swelling, and tenderness. Doc. 14-1 at 375. Dr. Oguntuga also noted that Plaintiff had 5/5 motor strength in all extremities, she could partially bear weight and walk with mild difficulty, and her symptoms, at worst, were moderate. Doc. 14-1 at 374-75. X-rays of Plaintiff's left knee revealed only mild degenerative changes of the patellofemoral joint. Doc. 14-1 at 377. Dr. Oguntuga diagnosed Plaintiff with

osteoarthritis, prescribed her pain medication, and noted that her symptoms had improved. Doc. 14-1 at 375.

Plaintiff had other visits to the emergency room from January 2013 through March 2015, for conditions such as a cough, eye irritation, and nausea. During these examinations, largely normal findings for her lower extremities were noted. *See* Doc. 14-1 at 379 (noting that Plaintiff walked to the emergency room without assistance and had no musculoskeletal deficits); Doc. 14-1 at 450-51 (Plaintiff assessed with normal range of motion in all extremities); Doc. 14-1 at 432 (same); Doc. 14-1 at 367 (Plaintiff assessed with no musculoskeletal deficits, extremities were negative for swelling, warmth, pain, tenderness, and she had a normal range of motion); Doc. 14-1 at 410 (Plaintiff able to move all extremities with full function).

In July 2016, Dr. Thomas Pfeil, M.D., conducted a consultative examination. Doc. 14-1 at 749. Plaintiff's chief complaints were joint pain, leg swelling, and elevated blood pressure. Doc. 14-1 at 749. Plaintiff reported that she had rheumatoid arthritis and osteoarthritis, but denied any specific injury. Doc. 14-1 at 749. Dr. Pfeil observed that Plaintiff had a slight limp on her right leg, she was unable to bend forward fully, she was unable to squat fully due to knee and hip pain, she had decreased range of motion in her hip and knees, and she had tenderness over the right hip. Doc. 14-1 at 751. X-rays of Plaintiff's knees and right hip revealed moderate to severe degenerative changes. *See* Doc. 14-1 at 753-54 (Plaintiff's right and left knee showed moderate degenerative hypertrophy and joint space narrowing); Doc. 14-1 at 755 (Plaintiff's right hip showed severe degenerative joint disease). Dr. Pfeil's clinical impressions were hip and knee pain and elevated blood pressure. Doc. 14-1 at 751. Dr. Pfeil noted that Plaintiff cannot walk or stand for more than one hour before sitting to rest, and that she is unable to kneel, squat, or navigate stairs. Doc. 14-1 at 751.

Also in July 2016, Dr. Jeanine Kwun, M.D., assessed Plaintiff's physical residual functional capacity ("RFC") from January 1, 2016 to present and concluded that she was disabled. Doc. 14-1 at 103, 106. Dr. Kwun concluded that there was insufficient evidence to assess the severity of Plaintiff's impairments prior to January 1, 2016. Doc. 14-1 at 104-05. Dr. Kwun cited Dr. Pfeil's consultative exam and Plaintiff's 3373 Form to support her conclusion. Doc. 14-1 at 104-05.

### C. The ALJ's Findings

In April 2018, the ALJ issued a decision partially favorable to Plaintiff. Doc. 14-1 at 18. The ALJ found that prior to January 1, 2016, Plaintiff had the medically determinable impairments of degenerative joint disease of the knees and right hip, elevated blood pressure, and obesity. Doc. 14-1 at 25. The ALJ concluded that Plaintiff did not have a severe impairment or combination of impairments—and therefore was not disabled—because her medical impairments had not "significantly limited ... the ability to perform basic work-related activities for 12 consecutive months." Doc. 14-1 at 25. However, the ALJ determined that starting January 1, 2016, Plaintiff had the severe impairments of osteoarthritis of the bilateral knees and right hip. Doc. 14-1 at 33. The ALJ further found that Plaintiff had the RFC to perform a limited range of sedentary work. Doc. 14-1 at 34. The ALJ concluded that Plaintiff was unable to perform her past relevant work and that there were no other jobs that Plaintiff could perform. Doc. 14-1 at 36. Thus, the ALJ found that Plaintiff "was not disabled prior to January 1, 2016 . . . but became disabled on that date and has continued to be disabled. . . ." Doc. 14-1 at 36.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether an individual is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past relevant work, a finding of "not disabled" must be made; and (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Judicial review of the Commissioner's decision is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh

the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

### III.  ANALYSIS

#### A.  The ALJ Committed a *Stone* Error, but the Error is Harmless

Plaintiff argues that the ALJ applied an incorrect severity standard at step two in finding that her pre-2016 physical impairments were not severe. Doc. 17 at 10 (citing *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)). Plaintiff also argues that the medical evidence before and after January 1, 2016 is nearly identical; therefore, she was disabled prior to January 1, 2016. Doc. 17 at 11-14.

Defendant responds that the ALJ's citation to Social Security Ruling ("SSR") 85-28 fulfills his obligation under *Stone* to cite to either the *Stone* standard or another opinion to the same effect. Doc. 18-1 at 3. Regardless, Defendant asserts that any error in not applying the *Stone* standard is harmless. Doc. 18-1 at 3-5 (citing *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (per curiam)).

Without doubt, the ALJ applied the incorrect *Stone* standard in stating that Plaintiff did not have a severe impairment or combination thereof prior to January 1, 2016 because her medical impairments had not "significantly limited . . . the ability to perform basic work-related

6

activities." Doc. 14-1 at 25; *cf. Stone*, 752 F.2d at 1101 (holding that "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it *would not be expected to interfere* with the individual's ability to work, irrespective of age, education or work experience.") (alterations omitted) (emphasis added); *cf. James E. v. Saul*, 3:18-CV-1021-N-BK, 2019 WL 4648574, at *4 (N.D. Tex. Aug. 29, 2019) (holding impermissible under *Stone* an ALJ's statements that an impairment or combination thereof is "severe if [1] "it significantly limits an individual's ability to perform basic work activities") (citation omitted), *adopted by* 2019 WL 4643743 (N.D. Tex. Sept. 24, 2019) (Godbey, J.).

In this instance, however, the ALJ's error was harmless because substantial evidence in the record supports the ALJ's finding that Plaintiff's knee and hip pain were not severe impairments prior to 2016. Specifically, the ALJ noted that Plaintiff's diagnostic tests before January 1, 2016 revealed only mild to moderate findings. Doc. 14-1 at 28; *see* Doc. 14-1 at 341 (X-rays of Plaintiff's right knee in February 2011 revealed mild to moderate degenerative changes); Doc. 14-1 at 353 (X-rays of Plaintiff's right knee in March 2011 revealed mild degenerative changes); Doc. 14-1 at 359 (X-rays of Plaintiff's right knee in November 2011 revealed mild joint space loss); Doc. 14-1 at 483 (X-rays of Plaintiff's right hip in April 2012 revealed moderate osteoarthritic changes); Doc. 14-1 at 377 (X-rays of Plaintiff's left knee in June 2013 revealed mild degenerative changes). By contrast, Plaintiff's diagnostic tests after January 1, 2016 revealed moderate to severe changes. *See* Doc. 14-1 at 753-54 (X-rays of Plaintiff's right and left knee revealed moderate degenerative hypertrophy and joint space narrowing); Doc. 14-1 at 755 (X-rays of Plaintiff's right hip revealed severe degenerative joint disease).

While Dr. Pfeil's assessment shares some similarities with those during Plaintiff's 2011 emergency room visits, Doc. 14-1 at 352 (reporting right knee tenderness in March 2011); Doc. 14-1 at 479 (reporting right hip tenderness in April 2012); Doc. 14-1 at 375 (reporting left knee tenderness in June 2013); Doc. 14-1 at 751 (reporting right hip tenderness in July 2016), when viewed as a whole, the medical evidence of impairment before January 1, 2016 is inconsistent. Notably, as outlined *supra*, Plaintiff's emergency room visits between January 2013 and March 2015 were largely for other, unrelated issues, and during those visits, her lower extremities were essentially assessed as normal. This belies Plaintiff's argument that the medical evidence before and after January 1, 2016 is identical.

Plaintiff's 3373 Form—dated approximately one month after her claimed onset date—further supports the ALJ's decision that Plaintiff's impairments were non-severe prior to 2016. For instance, although Plaintiff reported that she could not walk very well due to daily pain, Doc. 14-1 at 290, she indicated that she lived independently, traveled to places by walking, shopped at stores once a month, dressed and bathed herself, prepared microwavable meals, and went to church. Doc. 14-1 at 291-94.

In sum, because the medical evidence of record supports the ALJ's conclusion that Plaintiff's impairments were not severe prior to January 1, 2016; thus, the ALJ's *Stone* error is harmless. *Taylor*, 706 F.3d at 603.

**B. The ALJ Fully Developed the Record**

Plaintiff next argues that the ALJ failed to fully develop the record because he did not order medical expert report to determine Plaintiff's RFC prior to the "arbitrarily" set date of January 1, 2016. Doc. 17 at 17. Plaintiff specifically argues that Dr. Kwun did not consider all of the medical evidence before January 1, 2016 because she only cited Dr. Pfeil's consultative

8

examination and the 3373 Form in her RFC assessment. Doc. 17 at 15. In response, Defendant contends the opposite, arguing that the ALJ relied on Dr. Kwun's opinion and Dr. Kwun "reviewed all of the evidence in the record to determine that the record did not demonstrate a disabling impairment prior to January 1, 2016." Doc. 18-1 at 8.

An ALJ owes a duty to a Social Security claimant to develop the record fully and fairly so as to ensure that the ALJ's decision is based on sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (per curiam). That duty must be balanced against the fact that Plaintiff bears the burden of proof through step four of the sequential evaluation process. *Holifield v. Astrue*, No. 09-31125, 2010 WL 4560524, at *2 (5th Cir. Nov. 10, 2010) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)). An ALJ's decision must be reversed if the ALJ failed to fulfill this duty to develop the record, and the claimant was prejudiced thereby. *Brock*, 84 F.3d at 728; *see also* 20 C.F.R. § 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.").

Here, however, the ALJ adequately developed the record and substantial evidence supports the ALJ's findings. The duty to develop the record becomes necessary only when the claimant presents sufficient evidence to raise a suspicion concerning an impairment, *see Jones v. Brown*, 829 F.2d 524, 526 (5th Cir. 1987), which Plaintiff did not do. Moreover, Dr. Kwun's conclusion that there was insufficient evidence to support the severity of Plaintiff's impairments prior to January 1, 2016 is supported by the fact that Plaintiff's emergency room visits from June 2013 to January 1, 2016 are all but void of knee and hip complaints. *See* Doc. 14-1 at 367, 379, 432, 367, 410, 451 (reporting largely normal findings for her lower extremities).

9

Finally, Plaintiff's argument that Dr. Kwun only considered Dr. Pfeil's consultative examination and the 3373 Form when determining Plaintiff's RFC is unpersuasive. Dr. Kwun undoubtedly reviewed the pre-January 1, 2016 evidence to reach her conclusion. *See* Doc. 14-1 at 97-99 (listing received reconsideration evidence available to Dr. Kwun, dated September 8, 2011 to July 25, 2016).

## IV.  CONCLUSION

For the foregoing reasons, *Plaintiff's Motion for Summary Judgment*, Doc. 17, should be **DENIED**, *Defendant's Motion for Summary Judgment*, Doc. 18, should be **GRANTED** and the Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on August 12, 2020.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).